IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:16MJ385 |
| v. | ) | |
| | ) | The Honorable Theresa C. Buchanan |
| ISSAC LANIER AVANT, | ) | |
| | ) | Sentencing Date: January 17, 2017 |
| Defendant. | ) | |
| | ) | |
| | ) | |

**POSITION OF THE UNITED STATES ON SENTENCING**

The United States of America, by and through its undersigned counsel, in accord with

18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual

("Guidelines" or "USSG"), respectfully files this Position of the United States with Respect to

Sentencing of Defendant Issac Lanier Avant ("Avant" or "defendant").

I.    **INTRODUCTION**

On August 22, 2016, the government filed a Criminal Information charging the

defendant with five counts of willfully failing to file a tax return for tax years 2009 through

2013, in violation of 26 U.S.C. § 7203.  Avant pleaded guilty to Count 1 of the Criminal

Information on November 16, 2016.  The government agrees with the guidelines calculation

of the Final Presentence Investigation Report ("PSR").  According to the PSR, Avant's total

offense level is 13, which with a Criminal History of Category I results in an advisory

Guidelines range of 12 to 18 months. (PSR at ¶¶24, 49, and 50).[1]  Section 7203 is a Class A

---

[1] The defendant has accepted responsibility for his conduct in a timely manner.  Therefore, as
noted in the PSR at paragraph 22, the United States moves the Court to grant the defendant an

14884187.1

misdemeanor with a statutory maximum of one year in prison.  Given Avant's failure to file

tax returns for six years, the Government recommends that the Court impose a sentence of one

year in prison.

      For the reasons set forth below, the United States recommends that the Court

(1) sentence the defendant to a period of incarceration of 12 months; (2) impose a one-year

term of supervised release; and (3) order restitution in the amount of $153,522 for the Internal

Revenue Service ("IRS").  Such a sentence would be sufficient, and not greater than

necessary, to accomplish the sentencing objectives identified in 18 U.S.C. §3553(a).

## II.   FACTUAL BACKGROUND

      The majority of the pertinent facts are covered in the "Offense Conduct" section of the

PSR, but this section will highlight the important conduct that the Court should consider in

deciding on an appropriate sentence.  Avant has been the Chief of Staff for Representative

Bennie Thompson since 2002.  In December 2006, he began an additional position as

Democratic Staff Director for the House Committee on Homeland Security.

      Avant's tax fraud began in May 2005, when he caused a Form W-4, Employee's

Withholding Allowance Certificate, to be filed with the his employer, the U.S. House of

Representatives, that claimed he was exempt from federal income taxes.  (Statement of Facts,

¶2)  When interviewed on January 26, 2015, the federal agents asked Avant why he had no

federal income tax withholdings from 2006 to early 2012.  Avant stated that he knew he was

having the least amount of money withheld from his paycheck, but could not explain why his

federal tax withholding dropped to zero for tax year 2006.  When presented with the Form W-

4 in a subsequent interview on June 9, 2015, Avant admitted to the agents that the signature

---

additional one-level reduction in his offense level.  The PSR's guideline calculations accounted
for the government's motion.

14884187.1

was his but he claimed that he did not write "exempt" on the form; he stated that he merely wanted the lowest amount of federal tax withholding allowed.  Avant also told the agents that he "knew at some point" that no federal tax was being withheld on his Form W-2 but is not sure what year that happened.  These statements defy credibility.  The chief of staff for a Member of Congress, who oversees a staff of 19-22 congressional office employees and handles payroll issues, claimed that he was having the lowest amount of federal tax withholding allowed, despite receiving a pay check every month with <u>no</u> federal income tax withholdings and receiving a Form W-2 for 2006, 2007, 2008, 2009, 2010, 2011, and 2012 with <u>no</u> federal income tax withholdings.  Avant himself admitted that if his net monthly take home pay increased by $1,000, then he certainly would have noticed – but then claimed he does not recalling noticing such a change in May 2005.  Put simply, Avant was not forthcoming with the federal agents when interviewed.

The first tax return Avant filed for a tax period in which he had no federal income tax withholdings was for tax year 2006.   It is a bizarre tax return.  As Avant admitted in the Statement of Facts, "the 2006 Form 1040 contained a substantially overstated charitable deduction of $26,000."  (Statement of Facts, ¶4)  On his Schedule A, Avant claimed he made a donation of $26,000 to Catholic Charities; Avant told the agents on June 9, 2015, that he did not give $26,000 to any charity.  This tax return also claims Avant donated the following to Catholic Charities: (1) an oil painting with a fair market value of $10,000, (2) a television with a fair market value of $4,500, (3) living room furniture with a fair market value of $4,900, and (4) a coin collection with a cost of $6,000.  Despite the fact he self-prepared the tax return through H&R Block's website, Avant stated that he did not know why the $26,000 donation to Catholic Charities and the $22,000 in noncash charitable contributions are on his

3

tax return.  Avant also took outlandish miscellaneous deductions for biking, chess, bass guitar, and rollerblading.  The tax return Avant filed with these ridiculous deductions resulted in an itemized deduction amount that all but wiped out his adjusted gross income and resulted in a claim that the tax owed by Avant was just $119.  As Avant admitted, the total assessed taxes for 2006 should have been $14,966.  (Statement of Facts, ¶8)

The same occurred for the 2007 tax return.  Avant claimed $78,500 in medical expenses, and charitable deductions of $53,698; Avant has admitted that these numbers were false.  (Statement of Facts, ¶4)  He told the agents he had medical expenses around this time frame but that they did not exceed $10,000.  Although this return was also self-prepared by Avant, he told the agents he "did not intend to convey those numbers" on his tax return and that this was a "mistake."  He again claimed miscellaneous deductions for bass guitar ($13,500), cycling ($8,800), and chess ($3,500).  He also claimed $10,530 in unreimbursed employee business expenses.  As a congressional staffer, any legitimate business expenses he incurred while working could have been reimbursed; even if he failed to seek such reimbursement, he is not then entitled to claim overt $10,000 in expenses that could have been reimbursed by his employer.  For 2007, Avant's adjusted gross income was $165,808, and he reported no federal income tax withholdings on his tax return.  By claiming itemized deductions of $163,109, Avant was able to lower his tax amount to just $321.

It's clear from the information received from H&R Block that Avant was simply playing with the numbers.  One version of the draft tax return he prepared on April 15, 2008, had different deduction amounts for different items, and resulted in a tax due of $636.  Despite no federal income tax withholdings, apparently that amount was too high for Avant, who on April 23, 2008 created and submitted the Form 1040 that resulted in a claimed tax due

4

of just $321.  As Avant admitted, the total assessed taxes for 2007 should have been $37,026. (Statement of Facts, ¶8)

In 2008, the civil side of the IRS opened a case on Avant for tax year 2006 and informed Avant in late 2008 that he owed $14,966 of tax due and owing for tax year 2006. Starting with the tax return due in April 2009 for tax year 2008, Avant did not file a tax return at all until after he was interviewed by federal agents in 2015 – he failed to file a tax return for 2008, 2009, 2010, 2011, 2012, and 2013 (a tax return for tax year 2014 was not yet due at the time of his first interview).  This is astounding.  Avant earned about $170,000 a year in a position of public trust, and his salary was funded by federal tax funds, yet he paid less than $450 in federal taxes in 2006 and 2007, and then neither paid any federal tax, nor filed a federal tax return for 2008, 2009, 2010, 2011, or 2012.

The IRS contacted Avant in 2010 about tax year 2008.  Avant still did not file a tax return for 2008, so the IRS prepared what is called a substitute return, and assessed Avant $38,204 of tax due and owing.  On April 15, 2010, Avant filed an Application for Extension for Time to File U.S. Individual Income Tax Return for 2009 (Form 4868), yet he failed to file a return by the extended due date of October 15, 2010.  In January of 2013, the IRS contacted Avant and his employer, the U.S. House of Representatives, to require the employer to begin withholding federal taxes from Avant's pay.  In April of 2013, the IRS also started to garnish Avant's pay for approximately $1,500 per month to repay his 2008 tax debt.

Because of the mandated withholding, the U.S. House of Representatives withheld $37,168 from Avant's pay in 2013.  Nevertheless, Avant still did not file a tax return for 2013 in April 2014, as required by law.  Avant told the federal agents in 2015 that he wanted to have a full year of withholdings before he began filing his taxes again, and that he wanted to

file "when he wouldn't owe anything." He also said that he first wanted to file for a "clean and complete year" before taking care of his tax issues – in fact, he said he was "looking forward" to filing a tax return when he wouldn't owe anything. Avant's cavalier attitude towards his legal duty to file and pay taxes, which extended from 2005 to the time he was interviewed by federal agents in 2015, is astonishing. The extremely limited written statement Avant submitted to the U.S. Probation Officer as to his acceptance of responsibility is further evidence of this disconcerting view of the seriousness of his tax fraud.

Because of his position on the House Committee on Homeland Security, Avant sought a security clearance in 2013. On September 18, 2013, Avant completed and submitted in the District of Columbia a "Questionnaire for National Security Positions" on a Form SF-86. A section of the Form SF-86 deals with financial issues, and there is a question that deals directly with taxes. The question asks, "In the past seven (7) years have you failed to file or pay Federal, state, or other taxes when required by law or ordinance?" Avant answered "No." Avant signed the Questionnaire under the following certification:

> My statements on this form, and on any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I have carefully read the foregoing instructions to complete this form. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both (18 U.S.C. 1001). I understand that intentionally withholding, misrepresenting, or falsifying information may have a negative effect on my security clearance, employment prospects, or job status, up to and including denial or revocation of my security clearance, or my removal and debarment from Federal service.

Another question on the Form SF-86 asks, "In the past seven (7) years, [have] you had your wages, benefits, or assets garnished or attached for any reason?" Avant failed to disclose that starting earlier that same year, the IRS began to take $1,500 per month out of his pay check. Another question on the Form SF-86 asks if "[y]ou are currently delinquent on any Federal

debt." Avant answered no this question, despite the fact that he was well-aware of a significant debt to the IRS for tax year 2008, not to mention the fact he had not filed a tax return in over five years or had any federal income tax withholding since 2005.

Avant's tax fraud spanned a ten-year time period – from the false Form W-4 he signed in May 2005 that claimed he was exempt from federal income tax withholding through to his first interview with federal agents in January 2015. It is anticipated that Avant will claim he should get credit for filing his long-overdue tax returns before he was criminally charged. He should get no such credit, as despite numerous efforts by the civil side of the IRS to get Avant to comply with his tax obligations, he did not file a tax return until after he was interviewed by an IRS-Criminal Investigation agent along with an FBI agent. This is akin to a bank robber returning the stolen money after being caught. As is argued in the next section, the government urges the Court to provide for deterrence by sentencing Avant to 12 months of imprisonment.

## III.     THE NEED FOR DETERRENCE

In tax cases, considerations of general deterrence are particularly important, and strongly weigh in favor of a term of imprisonment here. As the Sentencing Commission itself has stressed in explaining the policy considerations underlying the tax offense guidelines, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators." U.S.S.G. Ch. 2, Part T, intro. comment. The Fourth Circuit endorsed that reasoning in a tax evasion case, where it vacated a sentence of 18 months' home confinement:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010). And the late Judge Edward

Weinfeld of the Southern District of New York articulated the same point prior to the advent

of the Sentencing Guidelines:

> This court has long had the view that income tax evasion cases where defendants are found guilty, whether upon their pleas of guilty or after jury verdict, require a term of imprisonment. The income tax laws of our country in effect reflect an honor system under which the citizens are required to cooperate with the government, to file true and accurate returns. I have been of the view that unless a citizen lives up to his responsibility there must follow, barring an extraordinary situation, a term of imprisonment as an example to other people in the community.

*United States v. Tana*, 85 Cr. 1119 (EJW) (June 17, 1986; Tr. at 12-13).

A sentence of imprisonment sends the appropriate message to all that this sort of

conduct – failing to file an income tax return not for just one or two years, but for six years –

is serious and will result in incarceration. A sentence of probation here would undermine

deterrent efforts and send the wrong message – that those who earn significant income, yet do

not file tax returns or pay federal taxes, do not go to jail for economic crimes.

The question before this Court is what sentence is sufficient to provide just punishment

for this offense and adequate deterrence to other high-income, sophisticated individuals who

might be tempted to engage in similar conduct. A sentence of imprisonment sends the

appropriate message that these sorts of crimes are serious and will result in incarceration. *See*

USSG §1A1.4(d) (intro. comment.) ("the definite prospect of prison, even though the term may

be short, will serve as a significant deterrent, particularly when compared with pre-guidelines

practice where probation, not prison, was the norm").  By contrast, a sentence of probation would have no deterrent effect, and it would tend to undermine respect for the law and reinforce suspicions by some members of the public that wealthier individuals in high positions who commit economic crimes are often able to avoid prison.

## IV.   <u>CONCLUSION</u>

For the reasons stated, the government recommends that the Court sentence the defendant to a term of incarceration of 12 months.  The government also asks the Court to impose a one-year term of supervised release and order restitution in the amount of $153,522 to the IRS.

Respectfully submitted,

Dana J. Boente
United States Attorney


By:   _____/s/_____
Todd A. Ellinwood
Assistant Chief
U.S. Department of Justice, Tax Division
Jack Hanly
Assistant U.S. Attorney

14884187.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendant.

_____/s/_____
Jack Hanly
Assistant United States Attorney

Dated:  January 11, 2016

10