**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | **Case No. 1:16-cr-00385M-001** |
| ) | |
| **ISSAC LANIER AVANT,** ) | |
| ) | |
| **Defendant.** ) | |

**ISSAC LANIER AVANT'S
<u>MEMORANDUM IN AID OF SENTENCING</u>**

Issac Lanier Avant is a law abiding citizen and dedicated public servant who got in over his head financially.   Recognizing that he did not have the ability to pay his federal taxes, he decided not to file federal returns tax returns until he was again financially able to make payments.   As a result of this extraordinary lapse in his otherwise sound judgment, Mr. Avant was charged with numerous federal misdemeanors, has permanently harmed the spotless reputation he spent a lifetime building, and has been subjected to ridicule in the press.   While his offense conduct is wholly out of character for Mr. Avant, the way in which he has responded to it is fully consistent with his character.   He has exhibited extraordinary acceptance of responsibility.

Unaware of any criminal investigation, Mr. Avant was notified he would be subjected to garnishment of wages to make payments towards his tax obligation.   Mr. Avant did not challenge this garnishment when it began in April 2013.   Indeed, he was relieved the IRS had calculated the amount due and there was a mechanism in place by which he could start meeting his obligations. In his mind, his failure to file had effectively been resolved.   In January 2016, he was contacted by investigators from the IRS's criminal division.   He agreed voluntarily to speak with them

(without counsel) and readily acknowledged his obligation and explained that he had been making payments through garnishment for the past two-and-a-half years.   The investigators told him they were conducting an investigation.   They did not tell him he was a target of that investigation. Nonetheless, following the interview, Mr. Avant promptly filed all of the federal tax returns that were past due.   He did so without taking any itemized deductions other than for the state and local taxes he had paid, thus likely overstating his federal tax liability.   Further, he took steps to make additional payments on the federal past due amounts.   Even though he was already making payments to the IRS monthly by garnishment, Mr. Avant sought in February 2015 to be put on a voluntary installment plan, so that he could make monthly payments above and beyond the amount being garnished.

In June 2015, Mr. Avant again agreed voluntarily (without counsel) to be interviewed. Again, he was not informed that he was a target of a criminal investigation.   When he was ultimately charged in this case in August of 2016 with failure to file income tax returns, eighteen months *after* he had filed the returns in question and after he had been making payments toward the outstanding obligation for over three years, he promptly accepted responsibility and agreed to plead guilty for failure to timely file his 2009 return.   After he was charged, Mr. Avant learned the reason the IRS had never responded to his February 2015 request to be put on a payment plan was that his account had been frozen as a result of the criminal investigation and prosecution.   With the lifting of this freeze, through counsel, Mr. Avant agreed voluntarily to make monthly payments to the IRS of $2,200.00 toward the amount of taxes, penalties, and interest he owes.   He has already commenced making these monthly payments.

Mr. Avant was charged with, and has pled guilty to, violating 28 U.S.C. § 7203, a misdemeanor offense.   Mr. Avant respectfully asks the Court to put his offense conduct in the

context of his otherwise exemplary lifetime record of service. He respectfully recommends a sentence of one year probation with conditions of probation being the payment of $2,200.00 per month in restitution and the completion of 80 hours of community service. Such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a).

Section 3553(a) is written in mandatory terms. The court "shall" impose a sentence sufficient, but not greater than necessary and "shall" consider each of the enumerated statutory factors. The United States nonetheless seeks the most severe sentence possible in this case: 12 months' incarceration, which is the statutory maximum for an offense under § 7203. And, in its Position on Sentencing (filed January 11, 2016, DE 21), the United States discusses only the nature and circumstances of the offense (noting once, in passing, that the offense is a misdemeanor) and deterrence. It simply ignores each of the other factors that this Court is required to consider.

It is only by ignoring these other required factors that the United States can come to the recommendation it does. Since the Court may not similarly ignore the mandatory statutory factors at sentencing, for this reason alone, it should reject outright the sentencing recommendation of the United States.

The sentence Mr. Avant recommends, on the other hand, as set forth below, would take into account each of the required considerations: the seriousness of the offense, recognizing Congress' treatment of this offense as a misdemeanor; Mr. Avant's history and characteristics; just punishment; protecting the public from further crimes by Mr. Avant; promoting respect for the law; adequate deterrence; rehabilitation; payment of restitution; and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

3

## I.  Legal Framework

Any sentence imposed must comply with 18 U.S.C. § 3553(a), which directs district courts to "impose a sentence sufficient, but not greater than necessary" to fulfill the statutory purposes of sentencing.  *See Kimbrough v. United States*, 552 U.S. 85, 111 (2007).  The United States Supreme Court has held that the Guidelines are advisory and a calculation under the Guidelines does not enjoy any presumption that a sentence within the Guideline calculation is a reasonable or appropriate sentence.  *See Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."); *Rita v. United States*, 551 U.S. 338, 351 (2007) ("sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

Sentencing courts are instructed the Guidelines are just "one factor among several" that must be considered in determining a reasonable and appropriate sentence.  *Kimbrough*, 552 U.S. at 90; s*ee also Rita*, 51 U.S. at 351 (noting a sentencing court should consider arguments that a Guideline sentence "fails properly to reflect § 3553(a) considerations.").  The Guidelines should not be applied when doing so would be inconsistent with the overall goals of sentencing.  *Kimbrough*, 552 U.S. at 90.  A sentencing judge "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."  *Id.* at 101.

Pursuant to § 3553(a), the Court must fashion a sentence sufficient, but not greater than necessary, considering: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence: A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner; 3) the kinds of sentences available; 4) the Sentencing Guidelines; 5) policy statements of the Sentencing Commission; 6) the need to avoid unwarranted sentencing disparities; and 7) the need for restitution.

The Sentencing Guidelines in this case recommend a sentence of 12 to 18 months in Zone C.   With a sentence of 12 months and one day, an offender would serve a sentence of approximately 10 months after receiving good time credit.   In Zone C, Mr. Avant could serve half of that sentence as incarceration and the remainder in home confinement or community confinement.   Mr. Avant, however, respectfully requests the Court in considering the types of sentences available, as it is required to do under § 3553(a), to vary from the Guidelines recommendation and impose the sentence in the form of probation without confinement.   Upon consideration of all of the statutory sentencing factors, a sentence of 12 months' probation without confinement is sufficient without being greater than necessary.

## II.   The Advisory Sentencing Guidelines for Failure to File Are Excessive and Inconsistent with the Mandates of 28 U.S.C. § 994(j) and 18 U.S.C. § 3553(a)

Congress established a "carefully graduated scheme of criminal penalties" for violations of the Internal Revenue Code, with an intentional hierarchy:   tax evasion (26 U.S.C. § 7201) is the most serious offense and carries a 5-year statutory maximum; making an intentional false statement of material fact in tax returns (26 U.S.C. § 7206) is an offense of intermediate severity, with a 3-year statutory maximum; and failure to file (26 U.S.C. § 7203) — a misdemeanor — is the least serious offense subject to a 1-year statutory maximum.   S*ee United States v. Hajecate*, 683 F.2d 894, 904 (5th Cir. 1982).   Thus, Congress determined that failure to file, regardless of the tax loss involved, is a misdemeanor, the least serious tax offense.   This is the offense charged against Mr. Avant and the offense to which he pled guilty.

5

In 28 U.S.C. § 994(j), Congress directed the Sentencing Commission to ensure that the Guidelines resulted in sentences *other than imprisonment* for first time offenders like Mr. Avant who were being sentenced for an offense that was not a crime of violence or otherwise a serious offense:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

The Sentencing Commission, however, did not comply with this dictate in its treatment of misdemeanor failure to file offenses.  Rather than segregate less serious offenses so that they would result in the imposition of sentences other than imprisonment, it established that violations of the misdemeanor failure to file offense would be sentenced under the same Guideline, §2T1.1, as the serious felonies of intentional false statements of material fact and tax evasion.  Section 2T1.1 in turn looks to the tax loss table in §2T1.4 to enhance the base level of the offense based on the amount of the loss.   As a result, the amount of the tax loss in a failure to file case can result in a Guidelines range recommending imprisonment for someone with no criminal history, even though Congress was clear that the amount of the tax loss did not change the nature of a failure to file offense from a misdemeanor for which a sentence should be other than imprisonment to a serious felony where the sentence should be imprisonment.

The Commission did not design the tax Guideline in this manner inadvertently.   Rather, it made a policy judgment, inconsistent with the judgment of Congress.  Rather than distinguish between tax offenses that are misdemeanors, typically resulting in sentences other than imprisonment, and felonies, typically resulting in imprisonment, the Commission decided to treat

all tax offenses the same and deem all of them serious, resulting in prison sentences based on the amount of the tax loss, rather than based on the seriousness of the offense.

As the Commission states in the Background Notes to §2T1.1:

> This guideline relies most heavily on the amount of loss that was the object of the offense.   Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics. . . .   Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months.   This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length.   As a result, the number of probationary sentences will be reduced.

Thus, §2T1.1 is not based on an empirical study by the Sentencing Commission resulting in a Guideline reflecting the heartland of cases, but rather was based on a policy decision by the Commission to change pre-guidelines practices and ignore the distinction between a felony and a misdemeanor.   Guidelines are afforded less deference when they are based on policy judgments, rather than empirical study by the Sentencing Commission.   *See Kimbrough*, 552 U.S. at 109-10 (when a Guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect."); *see also Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.

In this case, the §2T4.1 table increased a base level of 6 to a base level of 16.   At offense level 6, Mr. Avant would be in Zone A of the Guidelines, with a range of 0-6, for which the sentence of probation is authorized.   At base level 16, resulting in an offense level of 13 after a three-level reduction for acceptance of responsibility, Mr. Avant is in Zone C, where a split

sentence is authorized, with one half of the sentence being imprisonment and one half home detention or community confinement.

The Sentencing Commission simply made a judgment that is contrary to its mandate from Congress.   It chose to treat misdemeanor offenses the same as felonies and chose to upgrade the seriousness of the offense based on the amount of the loss, despite the fact that Congress found the amount of the loss to be irrelevant in designating all failure to file offenses as misdemeanors.

The Commission's treatment of a misdemeanor failure to file offense as a "serious offense" is also inconsistent with Fourth Circuit law.   In another context, the Fourth Circuit has explicitly recognized that failure to file is not a "serious" offense.   *See In re Wray,* 433 F.3d 376, 378 (4th Cir. 2005) (reversing disbarment of an attorney based on the attorney's § 7203 misdemeanor conviction because the offense of willful failure to pay income taxes "does not constitute a 'serious crime' within the meaning" of the disciplinary rules); *see also United States v. Lachmann* 469 F.2d 1043 (1st Cir. 1972) ("Conduct chosen with that evil motive is separately provided for in section 7201 of the Code, and is made a felony. Presumptively there was a reason for section 7203. The very fact that Congress regarded violation of that section as a misdemeanor, only, at once supplies the reason and indicates that a less serious motive is addressed to.")

In fashioning sentencing recommendations for misdemeanor § 7203 offenses, the Sentencing Commission did not comply with § 3553(a)'s mandate that sentences should not be greater than necessary; nor did it comply with 28 U.S.C. § 994(j).   The Commission's discretion is not unbounded by congressional dictates.   When a Guidelines provision conflicts with a statutory mandate, it should not be followed.   *See United States v. LaBonte*, 520 U.S. 751, 757 (1997).   Accordingly, the recommended Guidelines range for Mr. Avant, which in any event is entirely above the statutory maximum for the offense of conviction, should be afforded little, if

any, weight in comparison to the other § 3553 factors.   *See United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007) (the sentencing court must consider each of the § 3553 factors, but need not give them equal weight); *United States v. Tucker*, 473 F.3d 556, 562 (4th Cir. 2007) ("If sentencing courts are to have the discretion to make an individualized determination based on a consideration of all the relevant factors that *Booker* mandates, we cannot foreclose district courts from assigning certain factors more or less weight than others, as the circumstances of a particular case may dictate.").

## III.   Nature and Circumstances of the Offense

Mr. Avant fully recognizes that he was legally required to file federal tax returns in a timely manner and in no way intends to minimize the importance of this statutory obligation.   However, as set forth above, failure to file is the least serious of a hierarchy of tax offenses and unlike the other offenses, is a misdemeanor.

In 2005, Mr. Avant was living in Virginia with a couple of roommates with whom he sharing expenses, and working on the Hill.   When his roommates decided to move on, Mr. Avant kept the apartment himself, causing his living expenses to increase dramatically.   He spoke to administrative personnel on the Hill to determine whether he could do anything to increase his take-home pay to meet his increased needs.   He learned that by changing his withholdings, he could increase his take-home pay.   Of course, this was only a short-term solution, since it led to a higher tax bill at year-end.

When Mr. Avant realized he owed taxes he could not possibly pay, he did not know what to do.   Rather than confront the problem, he avoided it.   Knowing he could not pay what he owed, he simply did not file his federal tax return.   Obviously, this was the wrong choice for him to make ethically and legally.   With each passing year that he could not afford his tax obligation, he

repeated this choice, thinking that he would start filing again when his finances improved and he could make his tax payments.[1]

By April 2013, the IRS had calculated Mr. Avant's outstanding tax obligation and sent him a notice of garnishment.   Because the notice was sent to Mr. Avant's Mississippi address, he did not receive it until after the IRS started garnishing his wages.

Mr. Avant did not challenge either the notice or the garnishment.   Indeed, he viewed it as finally offering him a solution to the problem that he had never properly addressed.   He now had a mechanism to start paying down the debt he owed.   After the garnishment was in place, Mr. Avant knew he was making monthly payments and believed the matter was effectively resolved.

Nearly two years later, in January 2015, he was visited by agents of the IRS Criminal Division.   They told him they wanted to speak to him about an official investigation they were conducting.   He agreed to speak with them voluntarily, without counsel.   The interview took place over two different sessions.   Mr. Avant readily admitted he had not filed returns for years in which he could not afford his tax obligation and explained that, through the garnishment process, he was now making monthly payments toward the tax obligation he owed.   The agents did not tell Mr. Avant that he was going to be charged with a criminal offense or even that he was a target of the investigation they were conducting.

Nonetheless, after having the conversation with the IRS agents, Mr. Avant realized he had not dealt with his IRS issues appropriately and wanted to do so.   He promptly filed each of his

---

[1] In its Position on Sentencing, the United States says Mr. Avant failed to file returns for six years.   DE 21 at 2, 8.   Mr. Avant was charged with failing to file returns for five years, the years 2009 through 2013, and pled guilty to failing to file for one year, 2009.   Plainly, Mr. Avant failed for years to address his situation. Had he only failed to file a single return, it is unlikely he would have been subjected to criminal charges. The duration of the relevant conduct (his continued failure to file in the years 2010 through 2013) is a factor the Court should consider.   But, as discussed below, so is the manner in which Mr. Avant has attempted to address the issue in recent years.

federal returns that were past due.   He wanted to be conservative to ensure that he acknowledged any possible taxes owed.   In filing those returns, therefore, he did not take any itemized deductions other than for the state and local taxes he had paid.   He thereby likely overstated his tax liability.

Mr. Avant did not stop at filing the returns and continuing to make payments towards the amounts owed through garnishment.   He went further.   He attempted to volunteer to make payments above and beyond the amounts being garnished by filing forms seeking to be put on a voluntary repayment schedule.   He did not get a response from the IRS after he filed these forms.

In June 2015, Mr. Avant was again visited by IRS agents.   Again, he voluntarily spoke with them without the benefit of counsel.   Again, he was not informed he was the target of a criminal investigation.

In August 2016, more than a year since he had last spoken to the agents, and eighteen months after he had filed his outstanding tax returns and volunteered to make payments above and beyond the amount he was already paying through garnishment, Mr. Avant was charged in this Court with failure to file the returns that had long since been filed.   Recognizing that while he had filed the returns at issue, he had done so only belatedly, Mr. Avant promptly accepted responsibility for his actions and pled guilty for failure to timely file his 2009 return.

Through counsel, Mr. Avant learned that the reason the IRS had never responded to his request to be put on a payment plan was that the IRS had frozen his account as a result of the pending criminal investigation.   After he pled guilty, the freeze was lifted.   Mr. Avant, through counsel, renewed his request to be put on a payment plan.   Since, to date, no plan has been put in place, Mr. Avant agreed to make voluntary payments toward his outstanding obligations.   He has

volunteered to make payments of $2,200.00 per month and has already commenced these monthly payments.

In sum, Mr. Avant has dealt with the investigation and his offense conduct in exactly the manner the Court should want to incentivize every person in a similar position to address similar issues.  He did not contest the IRS garnishment; he filed each of his outstanding returns; he attempted to make additional voluntarily payments; when charged with criminal offenses, he promptly accepted responsibility for his actions and entered a guilty plea; he had his counsel work with the IRS to reach a voluntary agreement to make payments towards his outstanding obligation; and he has been making those payments.

In its Position on Sentencing, the United States in discussing the nature and circumstances of the offense, barely referenced the offense with which Mr. Avant was charged and for which he is being sentenced.   Rather, the United States discussed other alleged offenses, never charged nor proven, and for which the statute of limitations has long since run.   For example, the United States discussed Mr. Avant's decision in 2005 to increase his take-home pay by changing his withholdings.   The statute of limitations on tax evasion or tax fraud is six years.   *See* 26 U.S.C. § 6531.   Thus, it is patently unfair to require Mr. Avant to defend his decision in 2005, eleven years prior to the commencement of this case.   More importantly, the United States' claim that Mr. Avant's recollections in a 2015 interview about these events from a decade earlier "defy credibility" (DE 21 at 3) is not at all accurate. Mr. Avant readily admitted that he had the administrative office for the House change his exemptions to increase his take-home pay as much as possible.   It matters little what the mechanics of this change were.   The United States makes much of the fact that, in 2015, Mr. Avant could not remember in precisely what year the increased withholdings occurred and did not know who wrote the word "exempt" on his 2005 W-4.   There

is no reason, however, for Mr. Avant to recall ten years later which House administrative employee assisted him in completing the W-4.   Mr. Avant readily admitted the signature on the form was his, the reason he signed the form was to ensure that his withholdings were as little as possible to maximize his take-home pay, and after the W-4 was processed, he was aware that the House was no longer taking any withholdings from him.[2]

Similarly, the United States criticized Mr. Avant for being unable in 2015 to explain deductions he took on his 2006 and 2007 returns.   For the 2006 return, the United States noted in its Position on Sentencing that through the Statement of Facts in support of Mr. Avant's plea, Mr. Avant admitted "the total assessed taxes [for 2006] should have been $14,966."   DE 21 at 4. While this is true, it is also important for the Court to note that Mr. Avant entered into an installment agreement with the IRS in February 2009 for the 2006 year.   Mr. Avant made monthly installment payments and paid the $14,966 in full, with interest.   Payment was completed by April 15, 2010.   Thus, Mr. Avant had acknowledged and paid this debt nearly five years *prior to* first being contacted by agents with the IRS criminal division in this case.

---

[2] In its Position on Sentencing, the United States also took issue with how Mr. Avant responded to certain questions in a SF-86, a 40-page government form he was required to fill out to obtain a security clearance for his job.   Mr. Avant has not been charged with making any false statements in that form.   However, to put the form in context, it was filled out *after* the IRS filed a substitute return for him and Mr. Avant was making payments toward his tax obligation through a monthly garnishment of his wages.   There is a single question on page 35 on the form about taxes.   Plainly, with the benefit of hindsight and when this question is highlighted in the current context, Mr. Avant should have answered this question affirmatively. However, at the time, the IRS had filed Mr. Avant's substitute return and he was making the payments the IRS was requiring him to make.   He believed the issue had been addressed and he was no longer out of compliance.   (While the substitute return was, in fact, only for the year 2008 and the payments were only being applied to that tax year, Mr. Avant did not know that in 2013 when he completed the SF-86.) Further, Mr. Avant's failure to disclose the IRS garnishment in the SF-86 form is understandable.   In its Position on Sentencing, the United States quoted the question asked on page 36 of the form about whether in the past seven years he had had wages garnished.   But the question was asked in a section called "Delinquency Involving Routine Accounts," a section that does not appear to pertain to taxes.   There is a separate section called "Delinquency Involving Enforcement."   The section pertaining to enforcement delinquencies, however, unlike the section pertaining to delinquencies involving routine accounts, did not ask about garnishment of wages.

With respect to the 2007 tax year, the United States in its Position on Sentencing did not claim that Mr. Avant owed any particular amount. The reason for that is that no notice of deficiency was ever sent to Mr. Avant for the 2007 year. Mr. Avant's IRS transcript for 2007 states that the additional amount of tax assessed was "$0." Thus, the United States' Position on Sentencing focuses in significant part on two tax years for which Mr. Avant either had never been notified of a deficiency or had been notified and had fully addressed the deficiency, years prior to Mr. Avant learning of the existence of a criminal investigation.

In 2015, when he filed his 2009 through 2013 returns, Mr. Avant did not take *any* itemized deductions (other than for state and local taxes paid). He filed the returns in this fashion to ensure that, if anything, he was overstating his tax liability, not understating it.

It is his conduct in 2015 that is far more relevant to determining the appropriate sentence on the offenses with which he has been charged than the accuracy of returns he filed a decade ago. Yet, in its Position on Sentencing, the United States argued that Mr. Avant should get no credit for filing his returns or for making efforts to pay what he owes. The United States likens Mr. Avant to a bank robber returning the stolen money after he is caught. *Id.* at 7.

The reasoning of the United States' position is flawed. Posit two different offenders. One offender fails to file a tax return and fails to pay taxes he owes. He is interviewed by the IRS about the return. While he is not told he is the target of a criminal investigation, he recognizes the seriousness of having not filed and promptly does so. He also voluntary agrees to make additional payments on top of the payments he is already making. A second offender fails to file a tax return and fails to pay taxes he owes. He is interviewed by the IRS about the return. After the interview, he takes no steps to rectify the situation, does not file the outstanding return, and makes no effort to pay what he owes.

14

Following the position of the United States would result in both offenders receiving the exact same sentence, the statutory maximum of 12 months' imprisonment.   But plainly these two offenders should not receive the same sentence.   The first offender has obviously accepted greater responsibility for his offense conduct than the second offender has and the Court should incentivize people who commit an offense to emulate the conduct taken by the first offender.   The United States is right that both individuals have committed an offense.   Paying back the money is not a defense to the crime.   But the United States is wrong that this somehow makes paying back the money irrelevant at sentencing.

## IV.       The History and Circumstances of the Defendant[3]

Mr. Avant was born and raised in Mississippi.   His father worked as a school bus driver, elementary school teacher, insurance salesman, World Book encyclopedia salesman, elected county supervisor, executive director of a federally-funded Enterprise Community, and founder and board member of a local nonprofit.   His mother worked for the public school system for 32 years and started a senior daycare facility after her retirement.   She also served in public office as a county supervisor.   His parents' roles as elected officials instilled in Mr. Avant a strong sense of the value of public service.   Mr. Avant's father died unexpectedly in 2008, immediately prior to the offense conduct, after a brief battle with a previously undetected advanced stage of cancer.

Mr. Avant was a motivated and successful student.   He received academic honors throughout his schooling and participated in extracurricular activities.   He was in a choir from kindergarten through the twelfth grade and in the band in junior high school and high school.   He was the drum major as a senior in high school.

---

[3] In its Position on Sentencing, the United States ignores this statutory factor altogether.

Mr. Avant attended Jackson State University, a historically black college in Jackson, Mississippi.   In addition to participating in band, he received numerous honors:   Beta Club, National Honor Society, Phi Beta Lambda, and President of the Economics Club.   He helped raise charitable contributions for Jackson State University and is a lifetime member of its National Alumni Association.

As an adult, Mr. Avant has always been active in his church and has been actively involved his involvement in his community.   He has been a member of McIvor M.B. Church in Sardis, Mississippi since 1987 and of Reid Temple A.M.E. in Maryland since 2007.   He served on the deacon board at McIvor.   He volunteered at monthly food giveaways in Crenshaw, Mississippi from the seventh grade through his freshman year of college.   Mr. Avant has helped raise money for college scholarships through the Marvin Hayes Scholarship Committee and volunteered at Friendship House in Washington, D.C. while interning on Capitol Hill.

Mr. Avant chose a career in public service, going to work for the congressman representing his home district in Mississippi.   He has worked for the same member of Congress for sixteen years.   At age 24, he became the youngest chief of staff in Congress, a position in which he continues to serve.   He attended law school and obtained a law degree, while working full-time on the Hill.   Throughout his career, he has received myriad accolades and awards. Mr. Avant has earned a stellar reputation and received speaking roles and awards from Livingstone College, Jackson State University, and the Congressional Black Caucus Foundation, among others.   *See*, *e.g.*, The Network Journal: Black Professionals and Small Business News (*Available at* http://www.tnj.com/40-under-forty/2009/i-lanier-avant.) (Listing Mr. Avant as one of its "Top 40 Under Forty Achievers," a list that "honors men and women under 40 years old whose professional accomplishments have significantly impacted an industry or profession, and who also have made

an important contribution to their community"); *see also* Exhibit A (myriad awards and accolades received by Mr. Avant for his public service).

In sum, Mr. Avant chose a role in which he can serve the public and he has done so admirably.   One consequence of his career choice is that he receives constant public scrutiny and is required to comply with high standards of ethics.   Despite this scrutiny, there has never been a hint of the slightest impropriety by Mr. Avant.   The offense conduct that brings him before this Court is truly aberrational from a lifetime of good work.

**V.    The Seriousness of the Offense, Respect for the Law, Just Punishment, Adequate Deterrence**

As set forth above, the offense is not a serious offense, but rather, a misdemeanor, and Mr. Avant is an otherwise outstanding citizen who has taken extraordinary responsibility for his actions.   Just as sentences must be harsh when a crime is a serious felony, they must be more lenient when the crime is not.   Respect for the law, including 28 U.S.C. § 994(j), compels this result.   And, a punishment of probation with conditions ensuring payment of restitution and requiring community service is a just punishment in this case.   It takes into account that Mr. Avant broke the law and that, while he has been convicted only of a single offense, his relevant conduct spanned a number of years.   But it also takes into account his otherwise stellar record of service and that he has taken substantial steps to remedy his past failure to meet his tax obligation. Long before he was charged, he had filed the relevant tax returns and was making payments to the IRS toward his tax obligation.   He has voluntarily made additional payments and agreed to continue to do so until the entire obligation, including penalties and interest, is paid off.

Under the circumstances, the sentence he has recommended provides adequate deterrence. Mr. Avant has not gotten away with committing a crime.   He has permanently harmed his previously sterling reputation and has been publicly shamed in the press.   He has embarrassed

himself, his employer, and his family.   He will be left with a criminal conviction.   And, if his recommendation is adopted, will be required to perform substantial community service.   There is no realistic likelihood that Mr. Avant will ever re-offend.   There is no need for additional specific deterrence.   Nor is there a need for additional general deterrence.   No one looking fairly at Mr. Avant's situation will want to engage in similar offense conduct.   Just the opposite; they will be deterred from doing so.

## VI.    The Need to Protect the Public[4]

Mr. Avant is plainly not a danger to the public.   He does not pose any risk to the community and he is highly unlikely to commit another offense in the future.   There is absolutely no need for any confinement of Mr. Avant in order to protect the public.

## VII.    Needed Educational or Vocational Training, Medical Care, or other Treatment[5]

Confinement is not necessary to provide any necessary training, care, or treatment to Mr. Avant.   Rather, confinement would be an expensive and unnecessary drain on the public fisc.

## VIII.    The Need to Avoid Unwarranted Sentencing Disparities[6]

As set forth above, the Sentencing Guidelines and the policy statements of the Sentencing Commission should be afforded little if any weight in a misdemeanor failure to file case. Moreover, varying from the recommended Sentencing Guidelines range will not result in an unwarranted sentencing disparity with other similarly situated defendants.   As noted above, the Sentencing Guidelines treat all tax offenses – evasion, false statement, and failure to file – similarly.   Yet, according to recent data from the Sentencing Commission, including defendants who committed the more serious felony tax offenses, more than one-third of tax offenders

---

[4] In its Position on Sentencing, the United States ignores this statutory factor altogether.
[5] In its Position on Sentencing, the United States ignores this statutory factor altogether.
[6] In its Position on Sentencing, the United States ignores this statutory factor altogether.

sentenced under §2T1.1 and §2T4.1 did not receive a sentence that included *any* term of imprisonment.   *See* "Quick Facts: Tax Fraud Offenses" (published by the United States Sentencing Commission and attached as Exhibit B).

In 43% of the cases in which the government did not sponsor a departure recommendation, the Court nonetheless imposed a sentence below the recommended Guidelines range.   *Id.*   The average reduction from the low-end of the recommended range in these cases was 12 months or an 83.6% reduction from the low-end of the applicable Guidelines range.   *Id.*; *see also* "Below Guideline Range with *Booker*/18 U.S.C. § 3553:  Degree of Decrease for Offenders in Each Primary Offense Category, Fiscal Year 2015" (published by the United States Sentencing Commission and attached as Exhibit C).   The median sentence imposed in tax cases was two months.   *Id.*

Mr. Avant has no criminal history and has been convicted of the least serious offense covered by the applicable Guidelines.   Sentencing him to probation without confinement will not result in an unwarranted disparity when 43% of the cases result in sentences lower than the Guidelines with a median reduction of 12 months or nearly 87%.   Mr. Avant, having been convicted of the least serious offense, would simply be in the more than one-third of these offenders who do not receive a sentence of incarceration.

## IX.   The Kinds of Sentences Available and the Need to Pay Restitution[7]

These final two factors weigh heavily in favor of the sentence recommended by Mr. Avant. There is no need for confinement.   Accordingly, any sentence that included confinement would be greater than necessary.   Mr. Avant is gainfully employed and is making payments toward his outstanding tax obligations.   Confining him would interfere with his ability to continue to make

---

[7] In its Position on Sentencing, the United States ignores both of these statutory factors altogether.

restitution payments.   Conversely, making his continued payments a condition of probation would assure the Court that the payments continue uninterrupted.

## CONCLUSION

Mr. Avant fully recognizes that he violated the law and has accepted responsibility for his offense conduct.   He has not done so merely with words; he has done so through his deeds.   His efforts to rectify the situation started long before he was charged, have continued throughout these proceedings, and will continue in the future.   He sincerely regrets his offense.   His efforts to make amends are consistent with his lifelong record of rectitude.   He respectfully requests the Court to sentence him to a term of 12 months' probation without confinement, require him to make restitution payments, and require him to complete a substantial number of hours of community service.


_____/s/_____
Dawn E. Murphy-Johnson
Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
900 Sixteenth Street, N.W.
Suite 900
Washington, DC   20006
(202) 626-5800
(202) 626-5801 (Facsimile)

*Counsel for Issac Lanier Avant*

## CERTIFICATE OF SERVICE

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____

Dawn E. Murphy-Johnson
Barry J. Pollack (admitted *pro hac vice*)
Miller & Chevalier Chartered
900 Sixteenth Street, N.W.
Suite 900
Washington, DC   20006
(202) 626-5800
(202) 626-5801 (Facsimile)

*Counsel for Issac Lanier Avant*